UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KENTA RAYNARD MOORE,

    Defendant.
_____/

Case No. 1:99-cr-149

HON. JANET T. NEFF

## **OPINION**

This case was remanded for the Court to reconsider defendant Kenta Raynard Moore's pro se Motion for Modification or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (Dkts 65-66). *United States v. Moore,* 582 F.3d 641 (6th Cir. 2009). The parties have filed supplemental briefs (Dkts 68-69). For the reasons that follow, this Court again denies defendant's motion.

On appeal, defendant contended that this Court improperly found he had distributed at least 4.5 kilograms of cocaine base (crack), thus making him ineligible for the sentence reduction. The Sixth Circuit Court of Appeals remanded for this Court to consider the merits of defendant's argument. The Court of Appeals agreed that while the facts described in the offense conduct section of the Pre-Sentence Investigation Report (PSR) "could have" allowed the Court to find by a preponderance of the evidence that defendant was responsible for at least 4.5 kilograms of crack, the facts set forth in the PSR do not "mandate" such a finding. 582 F.3d at 646.

The remand does not compel a different result. The offense conduct section of the PSR states in pertinent part the following:

12. On February 3, 2000, counsel for the government advised the probation officer of newly acquired information concerning Mr. Moore's drug distribution activities. This information was received subsequent to the debriefings of Kelly Dywan Petty and Alfonzo Dewayne Johnson after their respective guilty pleas. According to proffer statements provided by Mr. Petty and Mr. Johnson to the DEA, in approximately 1995 or 1996, Mr. Petty and Mr. Johnson and Mr. Moore began pooling their money together to purchase crack cocaine and powdered cocaine in kilogram quantities from Steve Johnson in Chicago, Illinois. The group paid anywhere from $20,500.00 to $24,000.00 per kilogram, and would purchase anywhere from two to three kilograms per month, sometimes as often as two to three times per month. However, not all of the individuals contributed money each time cocaine or crack cocaine was purchased. Most of the early purchases were in the form of crack cocaine. However, by 1998, they purchased the drug in powder form, with Mr. Johnson often cooking it into crack, if needed.

13. In total, Mr. Johnson and Mr. Petty estimated the group purchased between 180 to 300 kilograms of cocaine.

Based on the information that was available at the time of sentencing, defendant distributed between 180 and 300 kilograms of powdered cocaine. Of those amounts, some of the drugs were converted to cocaine base. At the original sentencing, the Honorable David W. McKeague found defendant distributed at least 1.5 kilograms of cocaine base. All of these facts were uncontested at sentencing.

Regardless of the amount of cocaine base distributed by defendant, the amount of powdered cocaine he distributed is a minimum of 180 kilograms. This amount would produce a base offense level of 38, which would result in the same total offense level. A new guidelines calculation would not result in a lower guideline range.

Even if defendant's guideline range were lowered, this Court would exercise its discretion to deny his motion. *See United States v. Ursery,* 109 F.3d 1129, 1137 (6th Cir. 1997) ("[A] district court has the discretion to deny a section 3582(c)(2) motion, even if the retroactive amendment has

lowered the guideline range."). Any sentence modification at this point in time is largely a moot issue as defendant's projected release date is March 1, 2010 (Dkt 56).

An Order consistent with this Opinion will be entered.


DATED: January 27, 2010          /s/ Janet T. Neff
                                 JANET T. NEFF
                                 United States District Judge